**AFFIDAVIT**

I, Terrance L. Taylor, being duly sworn, do hereby depose and state the following:

**INTRODUCTION**

1.    I am a Special Agent with the United States Department of Homeland Security, Homeland Security Investigations ("HSI"). I have been so employed with HSI since March 2012. I am currently assigned to the Office of the Resident Agent in Charge HSI Charleston, West Virginia (WV).  Since this time, I have gained experience in conducting investigations involving computers and the procedures that are necessary to retrieve, collect, and preserve electronic evidence. Through my training and experience, including on-the-job discussions with other law enforcement agents and cooperating suspects, I am familiar with the operational techniques and organizational structure of child pornography distribution networks and child pornography possessors and their use of computers and other media devices.

2.    I am a Special Agent with nineteen years of federal law enforcement experience.  Prior to my employment with HSI, I was a Police Officer for two years in Huntington, WV, a Special Agent with the United States Department of State-Bureau of Diplomatic Security for six years, a Special Agent with the Naval Criminal Investigative Service for two years, and a Special Agent with the

United States Department of State-Office of Inspector General for two years. I am a graduate of three federal law enforcement academies at the Federal Law Enforcement Training Center ("FLETC") and a graduate of the West Virginia State Police Academy. I graduated from the Criminal Investigator Training Program in 2002, and the Immigration and Customs Enforcement Special Agent Training Program in 2012. As part of these programs, I received extensive training in the areas of law within the jurisdiction of HSI. These areas include laws and regulations pertaining to the importation of various types of merchandise and contraband, prohibited items, money laundering, and various immigration violations. I have more specifically received training in the areas of child pornography and the sexual exploitation and abuse of children. This training includes specialized instruction on how to conduct criminal investigations related to violations of child protection laws pursuant to Title 18, United States Code, Sections 2251, 2252, 2252A, 2256 and 2422.

3.   As a Special Agent, I have investigated federal criminal violations related to high technology or cybercrime, child exploitation, and child pornography. I have gained experience through training at the FLETC, Immigration and Customs Enforcement, as well as everyday work relating to investigations involving the receipt, possession, access with intent to view,

2

production, importation, advertising, and distribution of child pornography that occur in the Southern District of West Virginia. I have received training in the areas of child pornography and child exploitation, and have had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media, including computer media. I have obtained search warrants for child pornography offenses, and I have been the case agent or assisted others in numerous investigations involving the sexual exploitation of children. Moreover, I am a federal law enforcement officer who is engaged in enforcing the criminal laws, including 18 U.S.C. §§ 2252A(a)(2) (receipt or distribution of child pornography), 2252A(a)(5)(B) (possession of child pornography), and 2422(b) (enticement of minors), and I am authorized by law to request a search warrant..

4.    I make this affidavit in support of an application for a criminal complaint against CHRISTOPHER LEE FOSTER, age 36, charging him with a violation of 18 U.S.C. § 2422(b). That statute makes it illegal for any person, through use of a means or facility of interstate commerce, to attempt to persuade, induce, entice, or coerce a minor to engage in sexual activity for which any person can be charged with a criminal offense.

5.    The information contained in this affidavit is based on an investigation conducted by a law enforcement employee acting in

3

an undercover capacity and information I obtained from other law enforcement officers involved in this investigation.

6.   Since this affidavit is being submitted for the limited purpose of establishing probable cause, I have attempted to summarize the most relevant facts that establish the requisite probable cause. Therefore, I have not included each and every fact of this investigation. Additionally, where conversations or statements are related herein, they are set forth in substance and in pertinent part.

## PROBABLE CAUSE

7.   On or about March 2, 2021, while acting in an undercover capacity, a HSI Special Agent (hereinafter referred to as Undercover Agent or "UCA"), was utilizing an undercover account on Kik Messenger to portray a 13-year-old female. The UCA had joined several teen groups on Kik through the undercover Kik profile. On or about March 2, 2021, the UCA received a private message from Kik user Foster139 with a display name of "Chris F," later identified as CHRISTOPHER LEE FOSTER. During the initial conversation, FOSTER said hello and quickly asked the UCA her age. The UCA responded that she was 13 and asked his age. FOSTER responded, "Omg you're younger than I thought. I'm 25. Is that okay with you?" He shortly thereafter asked if the UCA was "into older guys."

4

8.    FOSTER then sent the UCA a photo which depicted a white adult male with brown hair who appeared to be seated in a bed. FOSTER then stated "Thats me lol." The UCA then sent FOSTER a photograph of a young-looking female, to which FOSTER responded, "Omg wow." FOSTER indicated that he lived in West Virginia, and the UCA stated that she lived in New Jersey.

9.    During this initial conversation, FOSTER told the alleged minor that she was "gorgeous af" and stated "I bet you have a sexy body." The UCA responded, "Nah I don't think so lolol kinda awkard." FOSTER then asked if he could tell her something without her hating him, and then said, "When you sent that pic I had some inappropriate thoughts about you."

10.    After a few days of little interaction, on or about March 6, 2021, FOSTER stated that he had been thinking about her and asked, "You're 13 right?" The UCA responded "Ya that ok" and FOSTER said yes. He asked for another picture, and the UCA sent a different photo of the same young-looking female. FOSTER then started asking the minor if she would like to "cuddle and kiss" with him. He asked if the minor was single (she responded that she had never had a boyfriend) and he said he was single as well. He then asked if the minor would be his girlfriend. FOSTER said he could come see her and they could "kiss and cuddle and make love."

5

11.   Still on March 6, 2021, FOSTER asked the minor if she had ever "done anything like sexual before," to which the UCA responded "Not rly." FOSTER then asked her if she has ever wanted to do anything sexual, whether she ever wanted to masturbate, and whether she watched porn. The UCA responded no to these questions.

12.   On or about March 7, 2021, FOSTER told the UCA he could come up to visit her and get a room. He said they could kiss and cuddle, and also asked if she would "sleep naked" with him. The UCA responded saying that "would b silly . . . to both b naked" and said she had "never done that before." He asked if she wanted to do that with him and she said "ya." FOSTER began asking more questions, such as whether she had ever seen a man naked before and where she would want him to touch her while they were naked. The UCA indicated she was "curious to try stuff" as she had never done anything more than kissing, and she asked him what he thought she should try. FOSTER asked the purported minor if she wanted to touch him as well; when she said she did not know how to do that, he said, "I'll help you."

13.   After advising the UCA that he would help her learn how to touch him, FOSTER told her she could "touch my dick" and then explained how she should rub it to make it hard. He asked additional questions about her body, including about her breast size. FOSTER then told the UCA that he had a "pretty big dick" and

6

offered to send her a picture since she had never seen a penis before. FOSTER then sent a picture of what he stated was his erect penis. In the photograph, a hand touching the base of the penis has a tattoo appearing to be the Roman numeral "VI" between the thumb and index finger. After sending he picture, he asked, "You like my dick?" FOSTER then became more explicit in his conversations with the UCA. He asked her if she wanted to "see what it feels like for me to slide my dick in you" and reassured her that it only hurt a little at first.

14.   On or about March 8, 2021, FOSTER asked the UCA again if she liked the picture he had sent of his penis, and he said, "I bet it would feel amazing in you." The UCA stated that she did not want to get pregnant. FOSTER told her that he would "be very careful" to not get her pregnant because "as long as I pull out of you before I cum it'll be okay." In response, the UCA apologized for being "dumb" because she did not know how it works.

15.   On or about March 11, 2021, FOSTER continued to discuss his interest in having sex with the minor. FOSTER asked the UCA if she knew "what a blow job is." When the UCA responded no, FOSTER explained that "a blow job is where the girl puts her mouth on the guys dick lol." FOSTER then asked her if she wanted to try that and then sent her a video depicting a young female performing oral sex on an unknown male, telling her "that's a blow job." Law

enforcement confirmed with the National Center for Missing and Exploited Children that the video is tracked by their organization as suspected child sexual abuse material, but the suspected minor has not yet been identified.

16. After sending her the video depicting oral sex, FOSTER told the UCA that he had never seen a girl her age naked, and "if you would show me a pic of you naked would mean a lot to me." FOSTER also asked the UCA if she liked the video he sent and if she would "be interested in trying to give me a blow job." The UCA responded, "If u promise to not make fun of me if im like not good." He told her he would never make fun of her. He then told her that he might need to masturbate, sent another picture of his erect penis, and told her "thinking about you does that to me."

17. On or about March 12, 2021, FOSTER continued to attempt to persuade the minor to engage in sexual activity with him. He told her that he was not messing around with her and that he planned to come up and see her in person as soon as he could. FOSTER again asked if she liked the "blow job video" he sent and asked if she wanted to see more sex videos. FOSTER then asked her a series of questions, such as "You ever get horny," "Your clit ever tingle," and "Your pussy ever get wet?" When the UCA answered no to all the questions and asked if there was something wrong with her, FOSTER reassured her that there was nothing wrong with

her. He then said that if she was alone he was going to ask her to touch herself and tell him how it felt. He again told her he was thinking about masturbating and wished she was there to touch his penis.

18.   Still on or about March 12, 2021, FOSTER began to ask the purported minor a number of questions about her breasts. He sent her several photographs of topless young women (who did not appear to be minors) asking to compare their breasts to hers. FOSTER then asked if she had "ever seen a guy inside a girl" (to which the UCA responded no). FOSTER then sent the UCA approximately six close up images of an adult male penis penetrating a female vagina, several of which also depicted ejaculate on the vagina. He asked her what she thought about the images, and the UCA responded that she didn't know and asked what he thought. FOSTER also sent her a video depicting two adults engaged in sexual intercourse and told the purported minor that "sex feels really good" and that he would show her when they met. He also sent her two additional photographs of a woman's vagina, saying, "I think her pussy is nice but I bet yours is way better."

19.   On March 15 and 16, 2021, FOSTER continued to engage in conversations with the alleged 13-year-old girl attempting to increase her interest and knowledge about sexual activity in anticipation of what he wanted to do with her when they met in

person. He told her about how some women enjoy anal sex. FOSTER
also told her that he found an image online of "pics of girls about
your age" and sent a couple picture of topless younger females and
child erotica. He also sent additional photographs depicting oral
sex and three images depicting woman performing oral sex on dogs
and a horse. FOSTER also told the UCA that another girl from the
bowling alley where he worked, who was approximately 16 or 17, had
offered to perform oral sex on him. FOSTER told the UCA that he
had said no because he really liked the UCA.

20.   By March 29, 2021, FOSTER was offering to pay the alleged
13-year-old female for naked pictures. FOSTER also explained that
he wanted the UCA to be the person to fulfill his needs, explaining
that "Girlfriends are supposed to help their boyfriends with their
sexual needs and boyfriends are supposed to help the girlfriend.
I'm sorry I'm older and want sex. Like I need sex really bad." He
told her that sending pictures could help him until he could come
and see  her in person, saying that "if I go so long without
getting to cum I start aching and hurting down there. Do you want
me to hurt there?" FOSTER continued to make similar statements to
pressure the UCA to send him naked photographs, despite the UCA
saying she was scared to take pictures like that and that FOSTER
was upsetting her. When she still refused, he said "Ok I'll leave
you alone then. I'll ask that girl from the bowling alley wants to

come over and have sex." FOSTER sent the UCA alleged photos and text messages from the girl from the bowling alley, and FOSTER said that he wouldn't go have sex with her if the UCA sent him pictures. The next day FOSTER taunted her with descriptions of sex with the other girl.

21.  Despite this, FOSTER has continued to communicate with the UCA about meeting in person to engage in sexual activity.

22.  Law enforcement received subscriber information from Kik providing the name of Chris F with a confirmed email address of "fosterchris139@gmail.com." Kik also provided IP address history associated with the user Foster139. The IP address used to access the Foster139 Kik account during February and March 2021 was registered to Suddenlink Communications. The response from Suddenlink indicated the IP address had been assigned to an account associated with 301 Collinwood Drive, Oak Hill, West Virginia.

23.  Law enforcement located a mug shot online for a 2019 arrest in West Virginia of a Christopher FOSTER. The photograph from the mug shot matched the numerous pictures that Foster139 had sent to the UCA. A check with the WV Department of Motor Vehicles (DMV) identified a Christopher Lee FOSTER residing at 301 Collinwood Drive, Oak Hill, West Virginia. The image displayed on the driver's license also appears to be the same individual in the Kik Messenger chat between FOSTER and the UCA. The date of birth

11

listed for FOSTER with the DMV is the same date of birth listed in the 2019 arrest information.

## CONCLUSION

24. Based upon the information provided above, your affiant alleges that there exists probable cause to believe that CHRISTOPHER LEE FOSTER knowingly violated 18 U.S.C. § 2422(b), in that during in or about March through April 2021, he knowingly attempted to persuade, induce, and entice a person he believed to be a 13-year-old minor to engage in sexual activity for which any person can be charged with a criminal offense. Such criminal offenses include, but are not limited to, Third Degree Sexual Assault under West Virginia Code §61-8B-5 and a violation of 18 U.S.C. § 2423(b), which would have been committed had FOSTER traveled to from West Virginia to New Jersey and engaged in sexual activity with the minor in that location. FOSTER used a means and facility of interstate commerce to engage in this attempt to persuade, induce, and entice the minor in that he used the Internet and cellular networks.

12

Further your Affiant sayeth naught.

_____
SPECIAL AGENT TERRANCE L. TAYLOR
DEPARTMENT OF HOMELAND SECURITY
HOMELAND SECURITY INVESTIGATIONS


Sworn to by the Affiant telephonically in accordance with
the procedures of Rule 4.1 this 3rd day of May, 2021.

_____
HON. DWANE L. TINSLEY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA