IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

**UNITED STATES OF AMERICA**

v.  Criminal No. 2:21-cr-00095

**CHRISTOPHER LEE FOSTER**

## DEFENDANT'S SENTENCING MEMORANDUM

Defendant, Christopher Lee Foster, by his counsel, submits this Memorandum outlining the various 18 U.S.C. § 3553(a) factors for the Court's consideration at his upcoming January 12, 2022, sentencing hearing.

On September 21, 2021, Mr. Foster appeared before this Court and tendered his guilty plea to the offense of attempted enticement of a minor to engage in illegal sexual activity in violation of 18 U.S.C. § 2422(b). Mr. Foster's guilty plea was pursuant to a Rule 11(c)(1)(C) sentencing agreement with the Government where the parties agreed that the imposed term of imprisonment should be within the range of 235 to 292 months.[1] Dkt. No. 51 at 5. This range was calculated based upon the parties' stipulations concerning the applicable offense level enhancements as well as a slight reduction in the defendant's criminal history category from IV to III. From Mr. Foster's perspective, Criminal History Category III more accurately reflects the seriousness of his criminal history which included points scored for one felony

---

[1] The term of supervised release to be imposed remains in the Court's discretion.

burglary conviction where a home confinement sentence was imposed as well as three misdemeanor DUI-related convictions. (PSR ¶¶ 54-59).

The low end of the agreed upon sentencing range came from the calculation of the defendant's base offense level without the application of the contested U.S.S.G. § 2G1.3(c)(1) cross-reference:

Base Offense Level – 28

Misrepresentation of Identity – +2

Use of a Computer – +2

Pattern of Conduct (U.S.S.G. § 4B1.5(b) – +5

Adjusted Offense Level – 37

Acceptance of Responsibility – -3

Final Offense Level – 34 (Criminal History Category III)

Advisory Guideline Range – 188 to 235 months

The figure of 235 months represented the high end of the advisory guideline range in Criminal History Category III.

The high end of the agreed upon sentencing range came from the calculation of the defendant's base offense level with the application of the contested U.S.S.G. § 2G1.3(c)(1) cross-reference:

Base Offense Level – 32

Minor Between Ages 12 and 16 – +2

Use of a Computer/Misrepresentation of Identity – +2

Pattern of Conduct (U.S.S.G. § 4B1.5(b) – +5

  Adjusted Offense Level – 41

  Acceptance of Responsibility – -3

  Final Offense Level – 38 (Criminal History Category III)

  Advisory Guideline Range – 292 to 365 months

The figure of 292 months represented the low end of the advisory guideline range in Criminal History Category III. The agreed upon sentencing range falls between the upper and lower ends of the two potential guideline ranges.

  Mr. Foster has submitted a legal objection concerning the Probation Officer's application of the U.S.S.G. § 2G1.3(c)(1) cross reference which has been set forth in the PSR Addendum. Mr. Foster does not dispute that his conduct involved him making requests to the purported minor to take sexually explicit pictures of herself and send them to him. (PSR ¶¶ 11 and 14). The U.S.S.G. § 2G1.3(c)(1) cross-reference only applies where a defendant's conduct constituted the "causing, transporting, permitting, or offering or seeking by notice or advertisement" of a minor to engage in sexually explicit conduct for purposes of producing an image or video of the same. As no sexually explicit pictures were ever produced at Mr. Foster's requests, his conduct does not fall within the four corners of the cross-reference.

  This Court should not rely upon Application Note 5(A) to U.S.S.G. § 2G1.3 as the basis for imposing the cross reference. This commentary clearly expands the scope of prohibited conduct beyond the four categories expressly stated within the cross-reference. Application Note 5(A) specifically states that the cross reference is to be "construed broadly" and includes all instances where the conduct includes the

"persuading," "inducing" and "enticing" of a minor to produce sexually explicit materials. Such commentary which clearly expands the actual text of a guideline falls within the Supreme Court's prohibition addressed in *Stinson v. United States*, 508 U.S. 36, 40-41 (1993). For example, this Court, as well as four other judges within this district, have held that that commentary set forth in Application Note 1 to U.S.S.G. § 4B1.2 expanded the definition of a "controlled substance" offense to include non-listed inchoate offenses such as attempts, conspiracies, and aiding and abetting convictions. PSR Addendum at 31-32.

The same legal analysis applied in consideration as to whether prior convictions qualify as predicate offenses for a Guideline based sentencing enhancement should apply equally in the context of a similar Guideline based sentencing enhancement addressed by the U.S.S.G. § 2G1.3(c)(1) cross-reference. If the Sentencing Commission believed that conduct involving "persuading, inducing, enticing" should be considered within the U.S.S.G. § 2G1.3(c)(1) cross-reference, that language should have added to its text. The Sentencing Commission has done this in other instances, such as the 2016 revision of the U.S.S.G. § 4B1.2 definition for a "crime of violence" to specifically include ten different types of criminal offenses following the Supreme Court's decision in *Johnson v. United States*, 576 U.S. 591 (2015).

The Probation Office's rationale for imposing the cross-reference and responding to Mr. Foster's legal objection incorrectly focuses on the word "offering" without consideration of the context in which the word appears within the entire

phrase "offering or seeking by notice or advertisement."  The word "offering" is not a stand-alone term and has to be read in conjunction with the entire phrase.  This phrase is a direct reference to the language of 18 U.S.C. § 2251(d)(1), which prohibits the making, printing, or publishing of any notice or advertisement seeking or offering to produce a visual depiction of a minor engaged in sexually explicit conduct. It would make sense that the phrase "offering or seeking by notice or advertisement" was meant to include conduct punishable under 18 U.S.C. § 2251(d)(1), as opposed to conduct where a defendant requested a perceived minor to take sexually explicit pictures of herself, however, none were ever produced.

A recent Eleventh Circuit decision has held that a defendant cannot be convicted under 18 U.S.C. § 2251(d)(1) where the underlying conduct involved sending a private person-to-person text message requesting that a perceived minor take sexually explicit pictures of herself. *United States v. Caniff*, 955 F.3d 1183 (11th Cir. 2020).  In *Caniff*, a FBI agent was posing as a thirteen-year-old girl on a social media website.  955 F.3d at 1185.  The defendant contacted the perceived minor through a social media platform and there was an exchange of text messages.  *Id.* Several of the defendant's texts became sexually explicit in nature and asked the perceived minor to send him pictures of her genitalia and other sexual conduct.  *Id.* The defendant was arrested after he showed up at the minor's perceived home for a planned sexual rendezvous.  *Id.* at 1186. The defendant was charged with attempted enticement of a minor in violation of 18 U.S.C. § 2442(b), advertising for child pornography in violation of 18 U.S.C. § 2251(d)(1)(A), and attempted production of

5

child pornography in violation of 18 U.S.C. § 2256(1). *Id.* The defendant was convicted on all three counts at trial and received three fifteen year terms of imprisonment run concurrently with each other.

On appeal, the Eleventh Circuit vacated the conviction for advertising for child pornography on two grounds. First, the ordinary meaning of the term "advertisement" was not considered broad enough to encompass a private person-to-person text message. The Court indicated that an "advertisement" normally entailed "a public and typically commercial statement" as opposed to a private conversation. *Id.* at 1188. Second, the juxtaposition of the terms "notice" and "advertisement" in close proximity to one another within the statute would suggest that a "notice" be limited to public, as opposed to private, communications. *Id.* at 1191. The Eleventh Circuit relied on the rule of lenity to resolve any doubts concerning its statutory interpretation of the terms within the statute and held that the 18 U.S.C. § 2251(d)(1) prohibition against making any notice or advertisement seeking or offering child pornography does not apply to private text message sent between two individuals. *Id.* at 1191. The Eleventh Circuit noted that its ruling did not foreclose the Government from otherwise punishing the defendant's conduct under 18 U.S.C. § 2251(a) for attempted production of child pornography as was done in the case. *Id.* at 1192.

This Court can rely upon the Eleventh Circuit's decision as the basis for not considering Mr. Foster's conduct as "offering or seeking by notice or advertisement" to obtain child pornography from the perceived minor. Mr. Foster's remaining factual

objections to the report, his objection to the proposed $5,000 special assessment, and his legal objections to two proposed special conditions of supervised release have been set forth in the PSR Addendum.

**A.**     <u>**18 U.S.C. § 3553(a) Factors for Consideration**</u>

Mr. Foster would ask this Court to consider imposing a term of imprisonment of 235 months to be followed by a 10 year term of supervised release. A custody sentence amounting to nearly 20 years of incarceration should be considered as a sufficient, but not greater than necessary, punishment for Mr. Foster's criminal conduct. Mr. Foster would rely upon the following factors in support of this suggested sentence:

(1)     The nature and circumstances of Mr. Foster's conduct, which involved his engagement in making heinous sexually explicit comments to a perceived thirteen-year-old girl, never resulted in physical harm or sexual contact to a real minor. At all times, the person on the other end of the line was an undercover Homeland Security agent. (PSR ¶ 10). The fact that Mr. Foster engaged in multiple sexually explicit chat sessions during the month of March, 2021, is further evidence of his addictive nature to openly express his fantasy desires to engage in sexual encounters with minors. Mr. Foster was not going to be able to carry out this fantasy as he had a suspended driver's license and did not have access to a car that could take him to the minor's purported residence in New Jersey. (PSR ¶ 17). Mr. Foster is ashamed and embarrassed by his conduct and has requested that he have access to the appropriate level of counseling to address his addiction. (PSR ¶ 18). Mr. Foster

7

would request that he be recommended to serve his term of imprisonment at FCI Elkton so that he can participate in an appropriate sex offender treatment program.

(2) While the parties' agreed upon sentencing range would be considered as being a downward variance from the Probation Officer's final base offense level calculation, this Court should consider that there are mitigating factors present in some of the stipulated offense level enhancements that are present in Mr. Foster's case. For example, a two offense level enhancement under U.S.S.G. § 2G1.3(b)(2)(A) has been awarded based upon Mr. Foster claiming to be twenty-five years old when he was really thirty-five. (PSR ¶ 30). Mr. Foster's ten year misrepresentation about his age is not much of an aggravating factor if he had pretended to have been the same age, or closer to the same age, as the perceived thirteen-year-old girl. The latter type of age misrepresentation would be more likely to get a minor to engage in "sexting" and sending pictures to someone whom they think is a member of their peers. In that regard, there is not much difference between with a minor texting with an adult who is either twenty-five or thirty-five years old.

Mr. Foster has been scored a two offense level enhancement under U.S.S.G. § 2G1.3(b)(3)(A) for his use of a smartphone to communicate with the minor. (PSR ¶ 31). His use of his smartphone to commit the charged enticement offense was part and parcel of what allowed him to commit the underlying offense and should not necessarily be considered as an aggravating factor. The initial interaction between Mr. Foster and the perceived minor only occurred because the Homeland Security Agent had set up a profile on a popular social media site ("Kik") only available

through the internet. According to a 2019 Pew Research Center Survey, 81% of adults own a smartphone which they are more likely to use to access the Internet than any other device.[2] Mr. Foster was a user of Kik, so the only way that he was going to be able to communicate with the perceived minor would be using his smartphone to send and receive text messages. Given the recognition that text messaging is a fairly commonplace means of communication in today's modern society, Mr. Foster's use of readily available technology no longer serves as a reason to increase his offense level.

Mr. Foster has also received a five offense level enhancement under U.S.S.G. § 4B1.5(b) for previously engaging in a pattern of activity involving prohibited sexual conduct. (PSR ¶ 47). The enhancement arises where Mr. Foster had, on different occasions, admittedly taken pornographic images/videos of a sixteen-year-old minor with whom he was involved in a consensual sexual relationship. Regardless of one's opinions concerning the morality of this type of relationship, West Virginia law establishes the age of consent for sexual relations at sixteen years of age. *See* W. Va. Code § 61-8B-5. While Mr. Foster had not committed any crime by engaging in consensual sex with a sixteen-year-old minor, federal child pornography statutes prohibit him producing and possessing any images or videos of such conduct. This relationship was one which continued between the pair in despite the objections of the minor's parents, past her high school graduation, and her reaching the majority age of eighteen. (PSR ¶ 21). The increase of a total of nine offense levels (2+2+5) to

---

[2] *See* https://www.pewresearch.org/internet/2019/06/13/mobile-technology-and-home-broadband-2019/

Mr. Foster's guideline range has added years to his advisory guideline range and does not take into account the above-identified mitigating factors.

(3) 18 U.S.C. § 3553(a)(6) allows the court to consider avoiding unwarranted sentencing disparities with defendants involving similar records who have been convicted of similar conduct. Counsel is aware of the recently resolved case before this Court of *United States v. James Braddock Biggerman,* Crim. No. 21-cr-00037, which involved a defendant who pled guilty to a single count of attempted enticement of a minor. The stipulated facts in Mr. Biggerman's case showed that over the span of one month, Mr. Biggerman sent text messages to two different actual thirteen-year-old minors requesting that they enter into a sexual relationship and send him sexually explicit images and videos of themselves. Dkt. No. 37 at 13. Mr. Biggerman traveled from his residence in Berkeley County, West Virginia, to Bluefield, West Virginia, for the purpose of having sex with one of the minors with plans to later engage in a threesome with both of them in Charleston. *Id.* According to the court reporter's notes posted on CM/ECF, Mr. Biggerman's total offense level was 42 with his corresponding advisory guideline range of 30 years to life. The imposed sentence for Mr. Biggerman was a downward variance with an imposed term of imprisonment of 15 years to be followed by a 30 year term of supervised release. Dkt. No. 50.

While counsel recognizes that Mr. Biggerman's relatively young age as well as testimony from a retained psychologist about an underlying neurocognitive disorder are factors that are not present in Mr. Foster's case, the underlying conduct in both cases involved them engaging in sexually explicit chat sessions and their total base

10

offense level calculations were nearly the same. Mr. Foster's conduct differed to the extent that his case did not involve any actual minors or any travel by him for the purpose of engaging in sex with a minor. As such, this Court should consider that imposing a 235 month term of imprisonment would be consistent with the variance sentence imposed in Mr. Biggerman's case. A 235 month term of imprisonment will keep Mr. Foster in custody until he reaches his mid-fifties. Once released, Mr. Foster's activities will be closely monitored for an extended period under the special conditions of supervised release to ensure that he does not engage in any further criminal conduct.

Respectfully submitted this 6th day of January, 2022.

**CHRISTOPHER LEE FOSTER**

By Counsel

**WESLEY P. PAGE**
**FEDERAL PUBLIC DEFENDER**

**s/David R. Bungard**
David R. Bungard, Bar Number: 5739
Assistant Federal Public Defender
Office of the Federal Public Defender
300 Virginia Street, East, Room 3400
Charleston, West Virginia 25301
Telephone: (304) 347-3350
Facsimile: (304) 347-3356
E-mail: david_bungard@fd.org